STATE of Wisconsin, Plaintiff-Appellant,

v.

Damon A. GUDENSCHWAGER, Defendant-Respondent.

Supreme Court

*No. 95–0221. Oral argument February 21, 1995.—Decided March 22, 1995.*

(Also reported in 529 N.W.2d 225.)

For the plaintiff-appellant the cause was argued by *Sally Wellman,* assistant attorney general, with whom on the petition for supervisory writ was *James E. Doyle,* attorney general.

For the defendant-respondent there was a response and oral argument by *Bill Ginsberg* and *Mandell & Ginsberg,* Madison.

PER CURIAM. This matter is before us on the State's petition for emergency stay of release requesting that Damon A. Gudenschwager be retained in custody pending appeal. Under the facts of this case, we conclude that a stay of release pending appeal is appropriate.

The relevant facts are not in dispute. On May 6, 1991, Damon Gudenschwager pled no contest to two counts of first-degree sexual assault of a child, contrary to sec. 948.02(1), Stats. The victims were a seven year old girl and a nine year old boy with whom Gudenschwager had a trusting relationship.

Gudenschwager was sentenced to five years in prison on count one. The trial court withheld sentence on count two and placed Gudenschwager on probation for six years, consecutive to the sentence imposed on count one.

Gudenschwager reached his mandatory release date and was scheduled to be released from prison on December 7, 1994. On December 6, 1994, the State filed a commitment petition under chapter 980, the sexually violent person commitment law. The petition alleged that Gudenschwager was "presently suffering from a mental disorder which is either a congenital or acquired condition affecting the emotional or volitional capacity that predisposes him to engage in acts of sexual violence."

Gudenschwager moved to dismiss the chapter 980 petition on the ground that the law was unconstitutional. He also filed a motion requesting a custody/detention hearing and further asked to be released from custody pending the trial in the chapter 980 proceeding.

On December 27, 1994, a probable cause hearing was held before Sauk County Judge James Evenson. At

the hearing, the State's expert witness, Dr. Christopher Snyder, a clinical psychologist, testified that he had evaluated Gudenschwager in October of 1994. Dr. Snyder testified it was his opinion that Gudenschwager was suffering from pedophilia and that he was predisposed to commit further acts of sexual violence. Dr. Snyder noted that while in prison Gudenschwager had participated in a sexual offenders treatment program for about sixteen months. Gudenschwager was deemed to be less than optimally motivated and unwilling to participate in some of the therapies required in the sexual offenders program, so he was removed from that program. He was then referred to, and successfully completed, the deniers education program. Upon leaving the deniers program, it was recommended that Gudenschwager return to the sexual offenders program. This he failed to do.

On cross-examination, Dr. Snyder testified that if, following release, Gudenschwager were supervised by a probation agent who specialized in sex offenders and if he were successfully involved in a residential sexual offender program, the risk that he would reoffend would be substantially reduced.

At the close of the hearing, Judge Evenson found there was probable cause to believe that Gudenschwager was a sexually violent person as defined in sec. 980.01(7), Stats.[1] The basis for Judge

[1] Section 980.01(7), Stats., provides:

"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

436

Evenson's finding was that Gudenschwager had been previously convicted of a sexually violent offense and that he suffered from a mental disorder that made it substantially probable he would engage in further acts of sexual violence. Judge Evenson also specifically found that Gudenschwager suffered from a mental disorder and was dangerous. Judge Evenson ordered Gudenschwager to remain in custody pending a trial on the chapter 980 petition.

On January 19, 1995, a hearing on Gudenschwager's motion to dismiss the chapter 980 petition was held before Sauk County Judge Virginia Wolfe. Judge Wolfe ruled that chapter 980 was unconstitutional, and she granted Gudenschwager's motion to dismiss the commitment petition.

After Judge Wolfe had made her ruling on the constitutionality of chapter 980, Gudenschwager's counsel elicited testimony from probation agent Thomas Sprecher on the question of whether or not Gudenschwager should be released pending the State's appeal. While Sprecher explained that ideally Gudenschwager should be placed in an in-patient halfway house setting such as the "ATTIC" program in Madison, he informed the court that it might be seven or eight months before there was an opening at "ATTIC." In the meantime, Sprecher said he would require Gudenschwager to live in a rooming house in Baraboo.

Sprecher also testified that as condition of parole, Gudenschwager could have no contact with children and would have a curfew imposed on him. Sprecher said he would monitor Gudenschwager's place of employment and work hours and could use electronic monitoring to keep track of Gudenschwager when he was not at work. Finally, Sprecher said that

437

Gudenschwager would be required to participate in a weekly sex counseling therapy program in Baraboo.

Judge Wolfe found that there were conditions which would adequately ensure the safety of the community and she ordered Gudenschwager released from custody on January 24, 1995, unless the release was stayed by the court of appeals. Judge Wolfe conditioned Gudenschwager's release on his being monitored by an electronic monitoring device and complying with all other travel, living, work, education and other reasonable restrictions placed on him by agent Sprecher.

On January 20, 1995, the State filed a notice of appeal and a motion asking that Gudenschwager's release be stayed pending appeal. On January 23, 1995, the court of appeals issued an order granting a temporary ex parte stay of release.

On February 8, 1995, the court of appeals issued an order denying the State's motion for stay of release pending appeal. The court concluded that the State had failed to demonstrate irreparable harm if Gudenschwager were released under close supervision. It also stated that the record suggested that the State's ultimate objective was Gudenschwager's supervised release under chapter 980. Finally, the court of appeals stated that the trial court was in a better position than the appellate court to adjudge the matter. The court of appeals thus ordered that the emergency stay of Gudenschwager's release would expire on February 10, 1995.

The State filed a petition for emergency stay of release with this court. On February 10, 1995, this court issued an order construing the State's request as a petition for supervisory writ. It ordered Gudenschwager to file a response to the petition; stayed the court of appeals' February 8, 1995 order and

continued the emergency stay of release in effect; and scheduled the matter for oral argument.

Oral argument was held on February 21, 1995. At oral argument, the State conceded that the trial court had the inherent authority to release Gudenschwager pending appeal. However, the State argued that the trial court should not have released him. Having considered the State's petition and Gudenschwager's response thereto and having heard arguments of counsel, this court concludes that the trial court should not have ordered Gudenschwager's release. Consequently, the State's petition for a continued stay of release pending appeal should be granted.

As an initial matter, we must address the standard of review to be applied when an appellate court reviews a trial court's decision to grant or deny a stay pending appeal. In *In re Marriage of Faust v. Faust,* 178 Wis.2d 599, 501 N.W.2d 810 (Ct. App. 1993), the court of appeals stated, without citation, that motions for relief pending appeal brought under Rule 809.12 are considered *de novo* by appellate courts.

Rule 809.12 is based on Fed. R. App. P. 8(a). *Judicial Council Committee's Note,* 1978. It is well established that federal cases may provide persuasive guidance to the proper application of state law copied from federal law. See *State v. Leach,* 124 Wis. 2d 648, 670, 370 N.W.2d 240, 252 (1985). Our review of applicable federal law leads us to conclude that a trial court's decision to grant or deny a stay pending appeal should be reviewed under an erroneous exercise of discretion standard. *See e.g., Lopez v. Heckler,* 713 F.2d 1432, 1436 (9th Cir. 1983); *Beverly v. United States,* 468 F.2d 732 (5th Cir. 1972). Consequently, we overrule *Faust's*

439

holding that a *de novo* standard of review is appropriate.

An appellate court will sustain a discretionary act if it finds that the trial court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). For the reasons discussed below, we conclude that the trial court erroneously exercised its discretion in ordering Gudenschwager released from custody pending appeal.

A stay pending appeal is appropriate where the moving party:

> (1)   makes a strong showing that it is likely to succeed on the merits of the appeal;
> (2)   shows that, unless a stay is granted, it will suffer irreparable injury;
> (3)   shows that no substantial harm will come to other interested parties; and
> (4)   shows that a stay will do no harm to the public interest.

*In re Marriage of Leggett v. Leggett,* 134 Wis. 2d 384, 385, 396 N.W.2d 787, 788 (Ct. App. 1986). These factors are not prerequisites but rather are interrelated considerations that must be balanced together. See *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991), *rev'd on other grounds,* 954 F.2d 1174 (6th Cir. 1992). We will consider each of these factors in turn.

440

## LIKELIHOOD OF SUCCESS ON THE MERITS

To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. It has been said that the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the plaintiff will suffer absent the stay. In other words, more of one factor excuses less of the other. *Griepentrog,* 945 F.2d at 153. However, the movant is always required to demonstrate more than the mere "possibility" of success on the merits.

Since regularly enacted statutes are presumed to be constitutional, *see Chicago & N.W.R. Co. v. La Follette,* 27 Wis. 2d 505, 520–21, 135 N.W.2d 269 (1965), we conclude that, for purposes of deciding whether or not to grant a stay pending appeal, the State has made a strong showing that it is likely to succeed on the merits of its appeal of Judge Wolfe's finding that chapter 980 is unconstitutional.[2] Consequently, this factor weighs in the State's favor.

## IRREPARABLE INJURY

The harm alleged must be evaluated in terms of its substantiality, the likelihood of its occurrence, and the

---

[2] On January 19, 1995 this court accepted certification of the appeals in case nos. 94–1898, *State v. Carpenter,* 94–2024, *State v. Schmidt,* 94–2356, *State v. Post,* and 94–2357, *State v. Oldakowski.* Those appeals raise the issue of whether or not chapter 980 is constitutional. Our statement that regularly enacted statutes are presumed constitutional should in no way be construed to mean that we have prejudged the merits of those pending appeals.

proof provided by the movant. *Griepentrog,* 945 F.2d at 155. The harm identified by the State is that there is a substantial likelihood that Gudenschwager will commit further acts of sexual violence if he were to be released under the conditions set by Judge Wolfe.

At the probable cause hearing, Dr. Snyder noted that Gudenschwager had failed to complete the sexual offenders program while in prison. Dr. Snyder said the risk of Gudenschwager's reoffending upon release would be substantially reduced only if Gudenschwager were placed in a residential sexual offender program such as "ATTIC." At the close of the probable cause hearing, Judge Evenson found that there was probable cause to believe Gudenschwager was a sexually violent person and that it was substantially probable Gudenschwager would engage in additional acts of sexual violence. Judge Evenson also found that Gudenschwager suffered from a mental disorder and was dangerous. We believe these findings, coupled with the fact that if Gudenschwager were released he would be placed in a rooming house rather than a residential treatment facility, are sufficient to demonstrate the likelihood of irreparable injury unless a stay is granted.

## THE PUBLIC INTEREST

The public interest in this case lies in protecting the public from further acts of sexual violence. The State contends that releasing Gudenschwager from detention at this time would unnecessarily endanger the public and expose the public to the substantial risk that he will reoffend.

442

The State points out that Gudenschwager was convicted of sexually violent offenses against trusting children with whom he enjoyed family-like relationships. At the probable cause hearing, Dr. Snyder said that Gudenschwager's risk of reoffending would be substantially reduced if Gudenschwager were successfully involved in a residential sexual offender program, such as "ATTIC." However, agent Sprecher stated that it could be up to eight months before an opening at "ATTIC" occurred and in the meantime Gudenschwager would have to live in a rooming house in Baraboo. We agree with the State that given the nature of his previous crimes, releasing Gudenschwager to a rooming house and using electronic monitoring in an attempt to track his whereabouts will not adequately protect the community against the substantial probability that Gudenschwager will engage in further acts of sexual violence.

## HARM TO OTHERS

Gudenschwager will suffer a loss of liberty if he is retained in custody pending appeal. We do not mean to deprecate this loss of freedom. Gudenschwager has an interest in being released from custody pending appeal, and there is no doubt but that he will suffer harm if his incarceration is continued. However, on balance, we believe that the three factors discussed above outweigh Gudenschwager's interest in being released from custody pending appeal.

In conclusion, we reiterate that under the appropriate circumstances trial courts have the authority to release persons pending appeal. Under the facts of this

case, however, releasing Gudenschwager pending appeal is not appropriate at the present time. Although Judge Wolfe found that there were conditions of release which would adequately ensure the safety of the community, it does not appear that she considered that the conditions under which Gudenschwager was ordered released failed to comport with the conditions Dr. Snyder testified would substantially reduce the risk of Gudenschwager's reoffending. Consequently, we find that Judge Wolfe's decision to release Gudenschwager pending appeal amounted to an erroneous exercise of discretion.

*By the Court.*—The State's petition for a stay of release pending appeal is granted.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. The circuit court for Sauk county has declared ch. 980 unconstitutional; the state has appealed. Damon Gudenschwager seeks release from confinement pending the state's appeal.

Numerous cases involving ch. 980—the sexually violent person commitments law—are presently in the courts. We have accepted review of four cases challenging the constitutionality of the statute. Nineteen other cases are pending in the court of appeals, awaiting our decision. Since *Gudenschwager,* another case involving release pending appeal has come before this court. *State v. John J. Watson* (No. 95–0300). Many more cases are probably in the circuit courts, some involving the statute's constitutionality, others addressing defendants' motions for release pending appeal.

In the aggregate, cases involving ch. 980 are or will be consuming a substantial amount of the time and energy of the circuit courts and court of appeals. For

example, the *Watson* case alone has been through both the circuit court and the court of appeals several times before reaching this court.

Nothing in ch. 980 or the *per curiam* opinion in the case at bar will prevent Damon Gudenschwager from returning to the circuit court with another petition for release. In a new petition, Gudenschwager is likely to request that the circuit court order the appropriate agency to provide facilities suitable for the court to exercise discretion to release him.

Only after this court rules on the constitutionality of ch. 980 will the other courts be relieved of some of the burden of these ch. 980 cases. I believe this court should schedule the pending constitutional cases for oral argument before our summer recess, preferably in April, and decide them as promptly as possible. By doing so, we will give guidance to the circuit courts and the court of appeals. We will also clear up the confusion among offenders and the general public about the status of the law.

For the reasons set forth, I concur.