COURT OF APPEALS
DECISION
DATED AND FILED

April 26, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP285**

STATE OF WISCONSIN

Cir. Ct. No. **2021CV299**

IN COURT OF APPEALS
DISTRICT II

---

CITY OF CEDARBURG,

   PLAINTIFF-RESPONDENT,

 V.

WARREN J. EICKHORST AND KRISTIN E. EICKHORST,

   DEFENDANTS-APPELLANTS.

---

APPEAL from orders of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Warren J. and Kristin E. Eickhorst appeal pro se from an order of the trial court finding their dog to be a public nuisance and ordering a remedy of euthanasia. The Eickhorsts also appeal an order terminating a stay of the euthanasia order pending appeal. We affirm.

¶2 In January and March 2020, the Eickhorsts' eighty-three-pound pit bull, Jinx, bit a neighbor, C.S., two times.[1] In March 2020, the Cedarburg police chief wrote a letter to the Eickhorsts advising them that a neighbor had filed police reports concerning the two bites, ordering them to post a "Beware of Dog" sign on their property, and ordering that Jinx be muzzled and leashed when off their property. The letter advised that Jinx could be seized and euthanized if he bit another person or was found off their property unleashed or unmuzzled.

¶3 After two other incidents in which Jinx bit another neighbor, C.V., causing significant injury, and again went after C.S., the police chief wrote to the Eickhorsts in June 2021, reminding them of his March 2020 letter and the restrictions placed upon Jinx.

¶4 On August 19, 2021, the City of Cedarburg filed a complaint against Warren and Kristin seeking a finding that Jinx constituted a public nuisance, an order prohibiting the Eickhorsts "from keeping or harboring Jinx" within the Cedarburg city limits, or, in the alternative, an order for whatever "injunctive relief … the Court deems necessary to abate the nuisance."

¶5 A bench trial took place on February 23, 2022. The trial court entered a default judgment against Kristin because she failed to appear. The court

---

[1] We refer to the persons bitten by Jinx by their initials.

found that Jinx was a public nuisance and ordered the Eickhorsts to have Jinx put down by 5:00 p.m. on February 25, 2022.

¶6      Warren and Kristin appealed and also asked the trial court to stay the euthanasia order pending appeal. On February 28, the court held a hearing on the Eickhorsts' motion to stay. The court agreed to stay its order that the Eickhorsts euthanize Jinx, but ordered that Jinx "may not be at large under any circumstances." The court ordered that the stay would terminate when the appeal was over or upon "[r]eceipt of notice from the City of Cedarburg that 'Jinx' has been located at large."

¶7      After a neighbor notified the police that Jinx was at large on April 2, 2022, the City filed a motion asking the trial court to terminate the stay. The City also filed an affidavit from the officer who was dispatched to the area in response to the neighbor's report stating that the officer stopped Warren's car and observed "Jinx … in the back seat of the Eickhorst[s'] vehicle … very muddy, with a harness and a muzzle on." The officer averred further that Warren admitted to him that Jinx had been at large. A hearing on the motion was held on April 12, 2022. Warren appeared at the hearing but Kristin did not. The City offered photographic evidence of Jinx at large and called witnesses who were subject to cross-examination by Warren. The trial court granted the City's motion, terminated the stay, and ordered the Eickhorsts to have Jinx euthanized by 5:00 p.m. on April 15, 2022. The Eickhorsts appeal.

¶8      We first note that, after Kristin failed to appear at the bench trial, the trial court found her in default. She also failed to appear at the hearing on the motion to terminate the stay pending appeal. Kristin has forfeited her right to claim any error in the trial court by failing to appear and she has failed to

challenge the default judgment on appeal. *See* WIS. STAT. § 805.11(1) (2021-22).[2] Warren, as a nonlawyer, cannot appear on her behalf in a representative capacity. *See* WIS. STAT. § 757.30(1)-(2); *Jadair Inc. v. United States Fire Ins. Co.,* 209 Wis. 2d 187, 202, 562 N.W.2d 401 (1997).

¶9 Warren raises numerous arguments on appeal. None persuades us that the trial court erred. Although his brief is undeveloped and scattershot, he appears to challenge the sufficiency of the evidence to sustain the public nuisance injunction. When reviewing "the sufficiency of the evidence, we apply a highly deferential standard of review." *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 389, 588 N.W.2d 67 (Ct. App. 1998). We do not set aside the trial court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). In other words, the trial court's findings will be affirmed unless the great weight and clear preponderance of the evidence supports a contrary finding. *See Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643-44, 340 N.W.2d 575 (Ct. App. 1983). The extent of injunctive relief is a discretionary determination which we will affirm if "demonstrably made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *See State v. Seigel*, 163 Wis. 2d 871, 889, 472 N.W.2d 584 (Ct. App. 1991).

¶10 Municipalities are statutorily empowered to bring an action seeking injunctive relief to abate a public nuisance. WIS. STAT. §§ 823.01, 823.02. There are three elements to a claim of public nuisance: (1) the existence of a public nuisance; (2) the defendant's actual or constructive notice of the nuisance; and

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

(3) a causal link between the failure to abate the nuisance and an injury. ***Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.,*** 2002 WI 80, ¶2, 254 Wis. 2d 77, 646 N.W.2d 777. The trial court properly considered these elements to determine whether Warren maintained a public nuisance.

¶11 The first element necessary to prove liability for maintaining a public nuisance "requires only the existence of the public nuisance itself. The circuit court's inquiry appropriately focuses on the dangerous condition, and whether it meets the definition of public nuisance." ***Id.***, ¶28 (footnote omitted). In this case, the trial court properly applied the definition of public nuisance as defined in CEDARBURG, WIS., CODE OF ORDINANCES § 11-7-2 (2021).[3] *See **Town of Rhine v. Bizzell***, 2008 WI 76, ¶67, 311 Wis. 2d 1, 751 N.W.2d 780 (concluding that circuit court erred in failing to apply definition of public nuisance in municipal ordinance). The City's public nuisance ordinance states in relevant part:

> A public nuisance is a thing, act, occupation, condition or use of property which shall continue for such length of time as to: (a) Substantially annoy, injure or endanger the comfort, health, repose or safety of the public; [or] (b) In any way render the public insecure in life or in the use of property.

CODE OF ORDINANCES § 11-7-2(a)-(b). The code identifies specific actions or conditions that are "specifically declared to be public health nuisances," including "[a]ll animals running at large." CODE OF ORDINANCES § 11-7-3(j).

---

[3] Cedarburg's Code of Ordinances can be found online at https://library.municode.com/wi/cedarburg/codes/code_of_ordinances.

¶12    The evidence at trial established that Jinx was repeatedly at large in the neighborhood and bit two individuals three times during a two-year period. Indeed, Warren admitted at trial that Jinx bit C.S. two times, that C.V. reported being bitten by Jinx during this period, and that Jinx "may have nipped" another neighbor. C.S. testified that Jinx bit him in January 2020 and March 2020. C.S. testified that Jinx was again at large and charging at him in June 2021, after the Eickhorsts were warned not to allow him to roam at large. In addition, C.V. testified that Jinx was at large and bit him in his upper thigh in June 2021. C.V. testified that the bite caused "swelling ... about the size of [his] palm" and bruising from "right at the top of [his] thigh down to [his] knee." C.V. still had a hematoma "the size of half of a handball" four months after the bite and still has scars from the bite. Another neighbor testified that Jinx had been loose in his yard about six times over the course of 2020-21 and that he would not let his young children play in the backyard unattended due to his fears of Jinx. Warren also admitted that Jinx had been off leash away from their house "[f]our or five" times in the previous four years. Ample evidence supports the trial court's conclusion that this eighty-three-pound pit bull injured and "endanger[ed] the comfort, health, repose[, and] safety of the public" and "render[ed] the public insecure in life." *See* CODE OF ORDINANCES § 11-7-2(a)-(b).

¶13    Liability for maintaining a public nuisance requires proof that the defendant had actual or constructive notice of the public nuisance. ***Physicians Plus***, 254 Wis. 2d 77, ¶29. In this case, the March 2020 letter from the City's chief of police establishes that Warren had ample notice of the public nuisance posed by the Eickhorsts' failure to leash and muzzle Jinx and prevent the dog from roaming at large and biting and threatening neighbors. The chief notified the Eickhorsts that two biting incidents had been reported and directed that Jinx

remain on their property unless attended, muzzled, and leashed. The Eickhorsts were warned that failure to abide by that order could result in euthanasia of Jinx. Warren admits that he was aware of the biting incidents involving C.S.

¶14 Finally, "liability for maintaining a public nuisance requires proof that the failure to abate the public nuisance was a cause of [injury]." *Physicians Plus*, 254 Wis. 2d 77, ¶30. It is undisputed that the Eickhorsts violated the City's public nuisance ordinance by failing to control their dog, resulting in injury to their neighbors. The City has the power to enact and enforce its public nuisance ordinance for the "good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public." *See* WIS. STAT. § 62.11(5). The harm in this case is caused by the existence of the nuisance which is by definition a harm to the "health, safety, and welfare" of those who have encountered Jinx in the neighborhood. We conclude that sufficient evidence established that the Eickhorsts maintained a public nuisance which caused injury. The trial court appropriately considered and explained the reasons why the dog must be euthanized.

¶15 Warren's challenge to the trial court's decision to vacate the stay is equally unavailing. A court's decision on a request for a stay pending appeal is reviewed under an erroneous exercise of discretion standard. *State v. Gudenschwager,* 191 Wis. 2d 431, 439-40, 529 N.W.2d 225 (1995). Warren did not order a transcript of the April 12, 2022, hearing at which the court terminated the stay. When an appellant fails to provide a transcript, we must assume that the missing transcript would support the court's findings of fact and discretionary decisions. *See Austin v. Ford Motor Co.,* 86 Wis. 2d 628, 634, 273 N.W.2d 233 (1979). The trial court advised that the stay would be vacated if Jinx was again

"located at large." Warren fails to provide any facts to the contrary or to show that the court erroneously exercised its discretion in vacating the stay.

¶16    Warren raises many additional complaints, none of which find support in the record or the law. For example, he complains that he was denied discovery, an exchange of witness lists, or a jury trial. These challenges are utterly without merit, as the record is devoid of any indication that Warren made any such requests, that he paid a jury fee, or that the trial court ordered an exchange of witness lists. Moreover, Warren did not raise any of these challenges with the trial court, which means he cannot raise them on appeal. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").[4]

¶17    Warren's claims that he was not permitted time to prepare or call witnesses is also refuted by the record, which shows that he failed to have any other witnesses to testify on the trial date. Warren was provided notice of the trial date months in advance and was advised that any motion to dismiss would be decided on the day of trial. In fact, his motion to dismiss was decided promptly and well in advance of the trial date.

---

[4] Furthermore, Warren did not make several of the documents he now attaches in his appendix part of the record on appeal. His failure to do so also precludes this court from considering his arguments based on these documents. *See Choinsky v. Germantown Sch. Dist. Bd. of Educ.*, 2019 WI App 12, ¶34, 386 Wis. 2d 285, 926 N.W.2d 196 (stating that court of appeals "will not consider arguments based on facts or documents that are unavailable or not referenced in the record"), *aff'd sub nom. Choinsky v. Employers Ins. Co. of Wausau*, 2020 WI 13, 390 Wis. 2d 209, 938 N.W.2d 548. We decline to consider the documents in the appendix which were not submitted to the trial court or included in the record. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (stating that court of appeals is "limited to matters in the record, and will not consider any materials in an appendix that are not in the record") (citation omitted).

¶18    Warren's lists of other complaints, such as witness tampering, conflict of interest, and bias are also without merit.  Nowhere does Warren show that he raised these issues before the trial court.  These claims are also wholly undeveloped and unsupported by factual or legal authority.  Accordingly, we decline to address these challenges further.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").[5]  Lastly, Warren failed to file a reply brief wherein he could have attempted to refute each of the arguments raised by the City and addressed above.  In light of Warren's initial failure to develop any meaningful arguments, we deem these unaddressed issues to be a concession.  *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that where an appellant does not reply to a proposition asserted in the respondent's brief, court of appeals may take nonresponse as a concession).

*By the Court.—*Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] To the extent we do not address one of Warren's arguments, that argument is deemed rejected.  *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).